IN THE UNITED STATES DISTRICT COURT Eastern District of Kentucky
FOR THE EASTERN DISTRICT OF KENTUCKY F I L E D
COVINGTON DIVISION

FEB -5 2014

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

| | | |
|---|---|---|
| PETER CANAVAN NEWBERRY | ) | Case No. 2:13-CV-216 |
| | ) | |
| Plaintiff, | ) | JUDGE: BERTELSMAN |
| vs. | ) | |
| | ) | MAGISTRATE: SMITH |
| MARC H. SILVERMAN, D.D.S., et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

---

Now comes the Plaintiff, *pro se*, and herby submits the following Memorandum in opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (hereinafter "Motion to Dismiss"). Defendants' Motion to Dismiss should be denied because Defendants committed an intentional tort as to Plaintiff while he was a citizen of and residing in the Commonwealth of Kentucky which Defendants knew would result in an injury to Plaintiff in the Commonwealth of Kentucky.

Plaintiff also submits his affidavit, filed separately with this Court, in support of his Memorandum in Opposition.

**MEMORANDUM**

A federal court in a diversity action may assume jurisdiction over a nonresident defendant only to the extent permitted by the state's long-arm statute and by the Due Process Clause. In order for there to be jurisdiction consistent with due process, a defendant must have

1

sufficient minimum contacts with forum state so that "'traditional notions of fair play and substantial justice'" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940)). In other words, the defendant must have conducted himself so that he could "reasonably anticipate being haled into court" in that state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). This requirement is met if the defendant "purposefully directed his activities at residents of the forum . . ., and the litigation results from alleged injuries that 'arise out of or relate to' those activities. . . ." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

In *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), clarified that a two-step process should be used to determine whether personal jurisdiction exists over a nonresident defendant in the Commonweath of Kentucky, specifically overruling precedent that had collapsed this two-step process into a single inquiry of whether due process permits the exercise of personal jurisdiction. The Court explained,

> "[T]he proper analysis of long-arm jurisdiction over a nonresident defendant consists of a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam* jurisdiction may not be exercised. When that initial step results in a determination that the statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights. To the extent *Wilson* [*v. Case*, 85 S.W.3d 589 (Ky. 2002)], *Cummings* [*v. Pitman*, 239 S.W.3d 77 (Ky. 2007)], and like cases hold otherwise, they are overruled."

Id. at 57. "Whether personal jurisdiction may be exercised over a defendant is a fact-specific determination, and '[e]ach case involving the issue of personal jurisdiction over a nonresident

defendant must be decided on its own facts.'" *Powers v. Park, M.D.,* 192 S.W.3d 439, 444 (Ky. App. 2006) (footnote omitted).

Defendants' Motion focuses largely on the fact that dental malpractice alone is not enough for a court to exercise personal jurisdiction over a non-resident defendant, and that this is the case even though the non-resident defendant is aware that the dental services performed could give rise to an injury for a plaintiff in another state. Specifically, in *Kennedy v. Ziesmann,* 526 F.Supp. 1328 (E.D.Ky. 1981), the court refused to extend personal jurisdiction to a doctor who treated a Kentucky resident on the mere allegation that his work would have some effect in Kentucky. In *Kennedy,* the physician resided and practiced in Ohio, and his private medical practice was incorporated in Ohio. He was not on staff at any Kentucky hospitals, did not own property in Kentucky, and did not have a bank account in Kentucky. *Id.* at 1329. He did, however, list his practice in directories that circulated in Kentucky and admitted to having operated on a few other Kentucky patients during the last five years. Id. The plaintiff in *Kennedy* urged the court to extend personal jurisdiction to the defendant because he "'purposely' caused a 'consequence' in Kentucky, since he knew plaintiff would return there bearing any ill effects his treatment may have caused her." Id. at 1330-31. In rejecting the plaintiff's theory, the court concluded that "[a]lthough [the defendant] might have foreseen that his treatment of plaintiff might have some indirect effects in Kentucky, more than that is required" for a court to exercise personal jurisdiction over a nonresident defendant. Id. at 1332.

The Sixth Circuit has held that this something "more" is found when the defendant's conduct involves an intentional tort such as fraud. "The Supreme Court has recognized that the analysis shifts slightly when the application of the purposeful availment prong turns on a tort or

fraud-based claim." *Spectrum Scan, LLC v. AGM Cal.*, 519 F. Supp. 2d 655, 659-60 (W.D. Ky. 2007) (quotation omitted). In *Calder v. Jones*, 465 U.S. 783, 785-87, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), the Supreme Court held that the defendants, Florida residents, having published a defamatory article in the National Enquirer, could be haled into a California court where the subject of the article resided. "The court concluded that because the defendants allegedly committed an intentional tort, knowing it would have a potentially devastating impact upon the plaintiff, and knowing that the plaintiff would be primarily injured in the state in which she lived and worked and in which the magazine had its largest circulation, the defendants 'must reasonably anticipate being haled in court there to answer for the truth of the statements made in their article.'" *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) (quoting Calder, 465 U.S. at 790). This *Calder* holding, also known as the "effects test," has been read narrowly by the various circuits, including the Sixth Circuit. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). Simply put, "the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." Id. (citing *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005)).

However, in *Neal v. Janssen,* 270 F.3d 328 (6th Cir.2001), the Sixth Circuit applied the "effects test" in the context of a fraud claim and found that personal jurisdiction did exist. Specifically, the Court in *Neal* determined that personal jurisdiction was proper over an out-of-state defendant who had made fraudulent statements over the phone in the course of selling a horse boarded in the Netherlands. *Id.* at 330. In considering whether the defendant "purposefully availed himself" of the privilege of acting in Tennessee, the Sixth Circuit noted that the Defendant intentionally defrauded plaintiff in the contacts he directed to plaintiffs who were

4

located in Tennessee. *Id.* The false representations made in these communications were "the heart of the lawsuit," and consequently the Court found the purposeful availment prong was satisfied. *Id.* Specifically, in *Neal,* the plaintiffs contended that Janssen intentionally defrauded them in phone calls and faxes directed to plaintiffs or their agents in Tennessee about the price he received from the sale of Aristocrat. Id. at 332. The Sixth Circuit stated that when the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. Id. It is the quality of the contacts, not the quantity, that determines whether they constitute "purposeful availment." Id.; *LAK, Inc. v. Deer Creek Enter.,* 885 F.2d 1293, 1301 (6th Cir. 1989). Furthermore, the actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee. Id. These false representations were the heart of the lawsuit -- and were not merely incidental communications sent by the defendant into Tennessee. Id. Accordingly, the Sixth Circuit held in *Neal* that when a foreign defendant purposefully directed communications into the forum that caused injury within the forum, and those communications formed the "heart" of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state. Id. at 333.

This finding has not been limited to the Tennessee long-arm statute, but also is the same result reached by federal courts in relation to the Kentucky long-arm statute. In *Washburn v. Garner*, 2005 U.S. Dist. LEXIS 16623 (W.D. Ky. 2005), the Western District of Kentucky followed *Neal* and reached the same result in this case also involving fraudulent communications regarding the sale of used aircraft from the defendant in the State of Florida. In *Washburn*, the plaintiffs' claim was based on false representations that defendants allegedly sent from Florida to Kentucky in the form of faxes, emails and telephone calls. The content of defendants'

communication gave rise to this intentional tort action. Id. at 13. Thus, the district court held that although defendants focused on their minimal relationship with Kentucky, it was the quality of their contacts with Kentucky which controlled this case. Id. at 13-14. Such contacts were in no way "random," "fortuitous," or "attenuated." Id. at 14. The Court also had no trouble concluding that the plaintiffs' cause of action arose from the defendants' forum state activities. Id. Thus, the lone remaining inquiry is whether the acts of the defendants or consequences caused by the defendants have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Id. The district court concluded that as in *Neal*, the defendant engaged in a business transaction with plaintiffs that went on over a substantial period of time, and established a relationship with plaintiffs from which he hoped to profit financially. Id. Since the defendant then defrauded plaintiffs, the district court found that these facts were sufficient to make it reasonable for the Commonwealth of Kentucky to exercise personal jurisdiction over defendants in this case and denied defendants' motion to dismiss for lack of personal jurisdiction on that basis. Id.

Courts in the Western District of Kentucky have also held that allegations of fraud directed towards citizens of Kentucky are sufficient, under other circumstances, for Kentucky courts to exercise jurisdiction over the out-of-state defendant. *In D.C. Micro Dev., Inc. v. Lange*, 246 F. Supp. 2d 705 (W.D. Ky. 2003), the court concluded that the exercise of personal jurisdiction was proper where the defendant allegedly hacked into a server located in Kentucky and sent mass emails to Kentucky residents fraudulently urging them to "upgrade" their product to one owned by the defendant. *D.C. Micro*, 246 F. Supp. 2d at 712. More recently, the court exercised jurisdiction over an out-of-state defendant that solicited Kentucky residents through e-mails, telephone calls, and faxes to invest in an abusive tax shelter. *Kerman v. Chenery Assocs.,*

*Inc.*, No. 3:06CV-338-S, 2007 U.S. Dist. LEXIS 60258, 2007 WL 2363283, *2 (W.D. Ky. Aug. 14, 2007).

The result should be the same in the present case for Defendants also committed an intentional tort through fraudulent communications directed at a resident and citizen of the Commonwealth of Kentucky, while in the Commonwealth of Kentucky. Although Defendants' act of treating a Kentucky resident as a patient in the State of Ohio may not cause Defendants to purposely avail themselves of the privilege of acting in the Commonwealth of Kentucky, Defendant Marc Silverman's repeated statements to Plaintiff, a citizen of the Commonwealth, while in the Commonwealth of Kentucky, that Defendant Silverman performed a complete root canal on tooth #31 when Defendant's dental records (produced by Defendant more than a month after Plaintiff requested his records and after Defendant allegedly spent nearly six (6) weeks "reviewing" such records before producing to Plaintiff) for Plaintiff state that he only performed a partial root canal do rise to that level. (Newberry Affidavit, pars. 3, 6, 7, 9, 10, 11, 12, 13, 18, 21, 27, 29).  Similarly, Defendant Marc Silverman's statements to Plaintiff (again while Plaintiff was a patient of Defendant Silverman residing in and a citizen of the Commonwealth) that the problem could not have been the root canal since he did not have any nerve in his tooth, but rather the pain was from cancer or biting down too hard, were also fraudulent if the dental records produced were not fraudulently altered because those records completely contradict Defendant Marc Silverman's and state that the root canal was only a partial root canal. (Newberry Affidavit, pars. 6, 7).

These fraudulent statements are in conjunction with the fact that Defendant Marc Silverman also made fraudulent statements to Plaintiff regarding the existence and destruction of

his x-rays and records. After finally producing and stating that he had produced all records and x-rays in Defendants' possession, after allegedly "reviewing" Plaintiff's records for more than a month, Defendant Marc Silverman then produced additional records and an x-ray which he previously said had been destroyed or were no longer in existence. (Newberry Affidavit, par. 24). While Defendant Marc Silverman told Plaintiff that he destroyed the original x-rays at the time of the procedure, he has no explanation where the original x-rays are and how he could have possibly reviewed those allegedly destroyed records ten years after the original procedure when they were allegedly destroyed, and then later still a few years ago, when Plaintiff again complained of pain related to tooth #31 and Defendant Marc Silverman again stated that he reviewed the original x-rays from the procedure (Newberry Affidavit, pars. 4, 6, 27). Defendant Marc Silverman also had no explanation for the whereabouts of the diagnostic x-rays were which Defendant Marc Silverman took on several subsequent occasions after Plaintiff complained of pain in tooth #31. (Newberry Affidavit, par. 28).

Finally, it cannot be forgotten that this was not an isolated instance of a fraudulent misrepresentation but rather an ongoing fraud over a citizen of Kentucky on the part of Defendants that lasted approximately nine years. While in the Commonwealth of Kentucky, Plaintiff had multiple conversations with Defendant Marc Silverman regarding pain associated with tooth #31. (Newberry Affidavit, par. 29). Defendant Marc Silverman never admitted that the allegedly completed root canal was only partial nor that the incomplete procedure and untreated abscess could be the cause of the pain experienced by Plaintiff. Instead, Defendant Marc Silverman adamantly and steadfastly stated that Plaintiff's pain in tooth #31 could not be the result of the root canal procedure, because Defendant Marc Silverman had completed the root canal procedure and completely removed the nerve in that tooth and further informed Plaintiff

that there was no nerve in the tooth. (Newberry Affidavit, pars. 6, 7, 29). The only explanation which would <u>not</u> make Defendants' statements fraudulent would be that Defendants did perform a full root canal but then altered Plaintiff's medical records when Plaintiff requested them. However, this again would result in a purposeful availment of the privilege of acting in the Commonwealth of Kentucky since Defendant Marc Silverman engaged in the interstate transmission of fraudulent and altered dental records to the Commonwealth of Kentucky, and then represented to Plaintiff through emails, while in the Commonwealth of Kentucky, that these altered records were Plaintiff's true and accurate dental records. Why a dentist would destroy multiple x-rays used as a basis for his multiple diagnosis of cancer is beyond comprehension, unless the x-rays would show something else, especially if the dentist has a stated policy of keeping such diagnostic x-rays. (Newberry Affidavit, par. 17).

Thus, given that no matter how these facts are viewed, Defendants committed an intentional tort against Plaintiff while Plaintiff resided in, and was a citizen of, the Commonwealth of Kentucky. Since they knew that their fraudulent communications and actions would result in injury to Plaintiff in the Commonwealth of Kentucky, Defendants have purposely availed themselves of the privilege of acting in the Commonwealth of Kentucky and Defendants' Motion to Dismiss should be denied on that basis. If this Court believes that Plaintiff should amend his Complaint to include the additional facts included within Plaintiff's affidavit in order to support personal jurisdiction in this matter, then Plaintiff would request leave of court to do so at this time.

Respectfully Submitted,

_____

Peter Canavan Newberry
*Plaintiff Pro Se*
1217 Criswell Road
Berry, Kentucky 41003
Direct Dial:  (513) 608-4312
E-Mail:  peter.newberry@fuse.net

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Motion for Extension of Time to Respond to Motion to Dismiss was served upon John M. Dunn, Esq., Michael M. Mahon, Esq., and Danny M. Newman, Jr., Esq., REMINGER CO., L.P.A., 250 Grandview Drive, Suite 550, Ft. Mitchell, Kentucky, 41017 on the 5 day of February, 2014.

_____

Peter Canavan Newberry, *Plaintiff Pro Se*

10