

FILED
JOHN P. HEHMAN
CLERK

2014 MAY 15  PM 2: 49

U.S DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PETER CANVAN NEWBERRY :
:
       **Plaintiff,** : Case No. 1:14-cv-00313
:
v. : **JUDGE SANDRA S. BECKWITH**
:
MARC SILVERMAN, D.D.S., et al. : **Magistrate Stephanie K. Bowman**
:
       **Defendants.** :
:

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Plaintiff Peter Canavan Newberry, *pro se*, hereby responds to Defendants' Motion to Dismiss Plaintiff's Complaint and submits the following Memorandum in support thereof. Defendants' Motion must be denied when all material allegations are construed in Plaintiff's favor for said allegations set forth claims upon which relief can be granted under both Kentucky and Ohio law.

## MEMORANDUM IN SUPPORT

### I.    Introduction and Background Facts

Contrary to the Defendant's Motion, most of Plaintiff's claims do not involve a dental malpractice claim, but rather arise as a result of Defendant Silverman's separate intentional torts. Plaintiff submits that Kentucky law should apply in this case because the Commonwealth of Kentucky is the state with the most significant contacts in this case. Fraudulent misrepresentations were stated to the Plaintiff in Kentucky, and he relied upon them to his detriment there. The injuries which occurred in the Commonwealth of Kentucky included

1

emotional distress, the receipt of altered dental records, and a failure to receive other records which had been destroyed with the intent of eliminating Plaintiff's potential claims against him. Under Kentucky law, Plaintiff's dental malpractice claim, negligence, fraud, and emotional distress claims would all be viable and should not be dismissed because they were timely filed.

However, even if this Court finds that Ohio law should be applied, and the four year statute of repose eliminates Plaintiff's medical malpractice claim, Plaintiff's fraud, emotional distress claim and spoliation of evidence claims would still survive under Ohio law. Defendant Silverman committed fraud, and intentionally inflicted emotional distress upon Plaintiff, when he intentionally concealed his negligence at failing to complete the root canal procedure and informed Plaintiff that the cause of his pain was cancer or a bruised tooth. Defendant's decision to misstate the facts cannot be characterized as medical in nature. It also was not motivated by any medical consideration. Reasonable minds can only conclude that the repeated misstatements were not prompted not by medical concerns but by motivations unrelated and even antithetical to Plaintiff's physical well-being. The Ohio legislature certainly did not intend to protect these types of actions by the statute of repose. Thus, since these claims were timely filed, they should not be dismissed.

## II.     DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED

### A.     Motion to Dismiss Standard

When reviewing a 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To properly state a claim, a complaint must contain a "short and plain

2

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

In the present case, Plaintiff has alleged facts which allow this Court to draw the reasonable inference that Defendants could be liable for damages resulting from Plaintiff's claims of dental malpractice, negligence, fraud and emotional distress under Kentucky law, or Plaintiff's claims of fraud, emotional distress, and spoliation of evidence under Ohio law.

**B.      Kentucky Law Should Apply to Plaintiff's Claims in This Action**

While the state law of the transferor court generally applies when a case is transferred for purposes of convenience pursuant to 28 U.S.C. § 1404(a), the Sixth Circuit has held that the state law of the *transferee* court is applicable when an action is transferred pursuant to 28 U.S.C. § 1406(a), which generally applies to those actions brought in an impermissible forum. *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980) ("[T]he choice of law should depend upon the motive for the transfer, that is whether the transfer was pursuant to 28 U.S.C. § 1404(a) or 1406(a)."). Transfer pursuant to § 1406(a), the *Martin* court concluded, was appropriate:

> for the purpose of avoiding an obstacle to adjudication on the merits in the district court where the action was originally brought. That defect may be either *improper*

3

*venue* or lack of personal jurisdiction. This construction of Section 1406(a) necessarily limits the application of Section 1404(a) to the transfer of actions commenced in a district court where both personal jurisdiction and venue are proper.

*Id.* In the present case, the Court stated that "…under several theories, transfer would be appropriate." (Doc. No. 19). The Court did not state that it was specifically transferring based upon 28 U.S.C. § 1404(a) or 1406(a). Thus, there is no reason that Ohio's choice of law rules should automatically be applied in this case and that this Court should not apply the law of the transferor court. However, even if this Court does choose to find that Ohio's choice of law rules should apply, Kentucky law should still be applied.

"Ohio's choice-of-law rules are the rules in the Second Restatement of Conflict of Laws." *EnQuip Technologies Group v. Tycon Technoglass*, 2012 Ohio 6181, 986 N.E.2d 469, 2012 WL 6737839, at \*10 (Ohio Ct. App. 2012). While the court must determine which state has the most significant contacts, different choice-of-law rules apply depending on whether "the cause of action sounds in contract or in tort." Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 230, n.3 (6th Cir. 1997); *Nicula v. Nicula*, 2009 Ohio 2114, 2009 WL 1244170, at \*6 (Ohio Ct. App. 2009). Within the context of tort actions, to determine the state with the most significant relationship to the cause of action, Ohio courts consider "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; [and] (4) the place where the relationship between the parties, if any, is located . . . ." *Nicula*, 2009 Ohio 2114, 2009 WL 1244170, at \*6.

For claims of fraud, the Court must also consider:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

4

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 905 F. Supp.2d 814, 2012 U.S. Dist. LEXIS 154042, 2012 WL 5334027, at *17 (S.D. Ohio Oct. 26, 2012) (quoting Restatement (Second) Conflict of Laws § 148(2)).

Even based upon Ohio's conflict of law rules, Kentucky law should be applied to Plaintiff's claims because the Commonwealth of Kentucky has the most significant contacts in this case. Although the actual dental malpractice occurred in the State of Ohio, Plaintiff's suffered pain resulting from the dental malpractice in the Commonwealth of Kentucky. Also, the majority of the claims occurred in Kentucky. The misrepresentations made to Plaintiff occurred while he was in the Commonwealth of Kentucky, and he relied upon them to his detriment while in the Commonwealth of Kentucky. The altered dental records were requested and then received while in the Commonwealth of Kentucky. Finally, Plaintiff suffered emotional distress as a result of Defendant Silverman's statements to him while in the Commonwealth of Kentucky. Defendants knew that their actions would create injury in the Commonwealth of Kentucky. Thus, Ohio's rules of law should apply Kentucky law in this case.

C.      **Plaintiff's Dental Malpractice and Negligence Claims are Not Barred Under Kentucky Law**

Plaintiff's dental malpractice claim should not be dismissed under Kentucky law. It is undisputed that KRS Section 413.245 sets forth the controlling limitations period. Under that statute, civil actions for professional malpractice "shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." Therefore, courts must determine the date of "occurrence" of the alleged malpractice. *Queensway Financial Holdings, Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007). Second, if the instant action was filed more than one year after the occurrence date, the court must then determine the date of the plaintiff's actual or constructive discovery of the cause of action. *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994). The statute of limitations does not begin to run until there is a final adverse determination of the underlying claim. *Faris v. Stone*, 103 S.W.3d 1, 5 (Ky. 2003). *See also Alagia, Day & Trautwein v. Broadbent*, 882 S.W.2d 121 (Ky. 1994).

In *Adams v. Ison*, 249 S.W.2d 791 (Ky. 1952), the defendant physician left a rubber tube in the plaintiff's and informed him that there would be no potential problems from failing to remove the tube. Id. at 792. The court stated that there can be no contention that the cause of action accrued at the time of the alleged negligent act giving rise to the liability, which was when the doctor is alleged to have left the rubber tube in the body of the plaintiff, and not when he discovered or could have discovered by the exercise of ordinary diligence that the tube had not been absorbed by bodily processes. Id. at 793 citing *Carter v. Harlan Hospital Association*, 265 Ky. 452, 97 S.W.2d 9; 70 C.J.S., Physicians and Surgeons, § 60; *Bryson v. Aven*, 32 Ga.App. 721, 124 S.E. 553; Byers v. Bacon, 250 Pa. 564, 95 A. 711. The court stated that the statute of limitations was tolled where the physician by concealing the facts of liability, delayed or

6

prevented suit. Id. Then the statute begins to run only when the fraud or concealment is revealed or the facts discovered or should have been discovered by the exercise of reasonable diligence by the injured patient. Id. Concealment cannot be assumed; there must have been an affirmative act. Id. *Brown v. Grimstead*, 212 Mo.App. 533, 252 S.W. 973 (1923); *Pickett v. Anglinsky*, 110 F.2d 628 (4th Cir. 1940); 41 Am.Jur., Physicians and Surgeons, Sec. 123. Under some circumstances the duty to disclose what the doctor knows may render silence fraudulent. *Hudson v. Moore*, 239 Ala. 130, 194 So. 147 (1940); Moloney v. Brackett, 275 Mass. 479, 176 N.E. 604 (1931) (summarized in Notes 144 A.L.R. 222, et seq.).

The *Adams* Court stated that relationship of a patient to his physician is by its very nature one of the most intimate. Id. Its foundation is the theory that the physician is learned, skilled and experienced in the afflictions of the body about which the patient ordinarily knows little or nothing but which are of the most vital importance to him. Id. Therefore, the patient must necessarily place great reliance, faith and confidence in the professional word, advice and acts of his doctor. Id. It is the physicians' duty to act with the utmost good faith and to speak fairly and truthfully at the peril of being held liable for damages for fraud and deceit. Id. at 793-794; 41 Am.Jur., Physicians and Surgeons, Secs. 70, 73, 74; 70 C.J.S., Physicians and Surgeons, § 36; Cf. *Walden v. Jones*, 289 Ky. 395, 158 S.W.2d 609, 141 A.L.R. 105. Since the relationship of physician and patient begets confidence and reliance, a liberal attitude should be taken in behalf of the patient. Id. at 794. No degree of deceit or fraud by the doctor to avoid legal liability for malpractice by enabling himself to set up the shield of the statute of limitations should be permitted. Id.; *Schmucking v. Mayo*, 183 Minn. 37, 235 N.W. 633 (1931); *Groendal v. Westrate*, 171 Mich. 92, 137 N.W. 87 (1912), Ann.Cas. 1914B, 906; *Hudson v. Shoulders*, 164 Tenn. 70, 45 S.W.2d 1072 (1931).

7

This is not a case like *Welch v. Edds*, 2005 Ky. App. Unpub. LEXIS 794 (Dec. 2, 2005). In *Welch,* Welch alleged that in July and August 1997, Edds induced her to undergo liposuction and an abdominoplasty by misrepresenting his credentials. Id. at 1. She also claimed that his negligent performance of those procedures resulted in her disfigurement. Id. Welch ceased treating with Edds in June 1998, but did not bring her complaint until December 2002. Id. at 1-2. Welch contends, nevertheless, that the trial court erred by deeming her complaint outside the one-year limitations period because she did not "discover" her claim until sometime in 2002 because that is when she first learned that Edds had misrepresented his credentials and a medical expert first told her that Edds' treatment of her did not meet the standard of care. Id. at 2. The court disagreed because her final visit was on June 3, 1998, when, she claimed, his rough treatment caused her to lose whatever lingering faith she had in his ability. Id. at 4. Welch maintained that although she knew she had been harmed (i.e. disfigured) in June 1998 when she ceased to rely on Edds' treatment, she did not know she had been injured or wronged (i.e. that her legally protected interests had been invaded) until November 2002 when a doctor first told her that Edds' treatment had been negligent. Id. at 5. Edds assured plaintiff that he was a board-certified plastic surgeon and president of the board of plastic surgeons. Id. at 9. Welch claims to have relied on those assurances and not to have learned until the summer of 2002 that those assurances were false. Id. The discovery rule, however, generally does not require expert confirmation that one has been wronged. Id. at 5. Here, Welch knew by June 1998 that the results of Edds' treatment were deeply dissatisfying, and those results were sufficient to put her on notice that Edds' treatment may have been negligent, and thus were also sufficient to start the limitations period on her negligence claim. Id. Although the court found Welch's fraud claim to be viable, the court did not find that her malpractice claim was still viable. Id. at 6.

In the present case, as in *Adams*, Plaintiff's dental malpractice claim should not be dismissed pursuant to Kentucky law because Plaintiff had no idea that Defendant Silverman had not completely performed his root canal procedure until November of 2012 when he sought the care of an endodontist, Donald Kelly, who informed him for the first time that his root canal procedure had not been properly completed. (Complaint, par. 7). This was one year from the filing of Plaintiff's claim. Although Plaintiff had pain before that, as in *Welch*, based upon the professional relationship between Defendant Silverman and himself, he was entitled to rely upon Defendant Silverman's assurances that the pain was not related to an incomplete root canal procedure. Thus, since Plaintiff has a viable claim since Plaintiff alleged that Defendant Silverman did not properly perform the root canal procedure, and since it was timely filed since it was filed within one year from the time that Plaintiff learned of that the root can procedure had not been completed, Plaintiff's dental malpractice and negligence claims should not be dismissed.

D.     **Although Plaintiff's Dental Malpractice and Negligence Claims Would be Barred Under Ohio law by the Four-Year Statute of Repose Set Forth in R.C. Section 2305.113, Plaintiff's Remaining Claims are Viable Since They are Separate from the Dental Malpractice.**

If this Court finds that Ohio law applies, Plaintiff acknowledge that R.C. Section 2305.113(C) sets a four-year statute of repose for dental malpractice claims. However, even though Plaintiff's dental malpractice claim is barred, Defendant Silverman's fraudulent and intentional misrepresentations, related to the root canal procedure and Plaintiff's dental records, which occurred from the mid 2000's through 2012, were completely unrelated to Plaintiff's dental care and were not in any way made to further Plaintiff's dental care. These actions were made solely to prevent Plaintiff from filing claims against Defendants. The rational basis for

9

R.C. Section 2305.113(C), and the statute of repose, does not apply to Plaintiff's fraud, intentional infliction of emotional distress, and spoliation of evidence claims.

The statute of repose was enacted in response to a medical malpractice crisis in the State of Ohio. "Just as a plaintiff is entitled to a meaningful time and opportunity to pursue a claim, a defendant is entitled to a reasonable time after which he or she can be assured that a defense will not have to be mounted for actions occurring years before. The statute of repose exists to give medical providers certainty with respect to the time within which a claim can be brought and a time after which they may be free from the fear of litigation." *Ruther v. Kaiser*, 134 Ohio St. 3d 408, 412-413, 983 N.E.2d 291 (2012). Forcing medical providers to defend against medical claims that occurred 10, 20, or 50 years before presents a host of litigation concerns, including the risk that evidence is unavailable through the death or unknown whereabouts of witnesses, the possibility that pertinent documents were not retained, the likelihood that evidence would be untrustworthy due to faded memories, the potential that technology may have changed to create a different and more stringent standard of care not applicable to the earlier time, the risk that the medical providers' financial circumstances may have changed—i.e., that practitioners have retired and no longer carry liability insurance, the possibility that a practitioner's insurer has become insolvent, and the risk that the institutional medical provider may have closed. Id. at 413.

In the present case, Plaintiff's remaining claims are not related to the underlying dental malpractice claim, and the public policy considerations behind the statute of repose do not apply to these claims.

1.   **Plaintiff's Fraud Claim Should Not be Dismissed under Kentucky or Ohio Law**

In Kentucky, *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 46 6 Ky. L. Summary 44 (Ky. 1999), held as follows: "(T)he party claiming harm must establish six

elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. (Citation omitted.)" A fraud claim has a five year statute of limitations under Kentucky law. K.R.S. 413.130(1). The statute of limitations begins to run from the time the fraud could have been discovered through ordinary diligence. *Daugherty v. Am. Express Co.*, 485 Fed. Appx. 746, 749 (6th Cir. 2012).

The same is true for a potential fraud claim under Ohio law. In Ohio, the elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69, 23 OBR 200, 491 N.E. 2d 1101, paragraph two of the syllabus; *Cohen* v. *Lamko, Inc.* (1984), 10 Ohio St. 3d 167, 10 OBR 500, 462 N.E. 2d 407. As a cause of action separate and distinct from medical malpractice, a claim of fraud is subject not to the medical malpractice statute of limitations contained in R.C. 2305.11, but rather to R.C. 2305.09, which provides a four-year limitations period for fraud. The statutory period does not commence to run until the cause of action accrues, which occurs when the fraud and the wrongdoer are discovered. R.C. 2305.09; *Burr, supra*, at paragraph three of the syllabus.

In *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 514 N.E.2d 709 (1987). Plaintiff went to Preterm-Cleveland, Inc., a health care facility, in 1980 for the dual purpose of having her pregnancy terminated and her intrauterine device ("IUD") removed. Id. at 54. The

11

pertinent medical records indicate that the abortion was successfully completed. Id. The IUD was not recovered, apparently because it could not be located, although the records reflect an estimate by the physician of its possible location. Id. In her complaint, and in the evidence presented to the trial court, appellant alleged that agents or employees of appellee "negligently failed to remove the IUD" as requested by appellant. Id. Moreover, appellant alleged that she "was told by employees or agents of * * * Preterm *that the IUD had been removed*." (Emphasis added.) Id. The complaint further stated that "[i]n reliance on the misrepresentations of the employees or agents of * * * Preterm as alleged above, * * * [appellant] did not seek further medical attention in order to remove the IUD." Appellant alleged that "[a]s a result of * * * Preterm's negligence in failing to remove the IUD and misrepresenting to * * * [appellant] that the IUD had been removed, * * * [appellant] suffered great physical pain and emotional distress, underwent an operation to remove the IUD, received medical attention and will continue to receive medical attention the rest of her natural life, will suffer great pain of body and mind for the rest of her natural life, and was permanently scarred." Id. Appellant asserted that she did not discover that the IUD remained in her body until she underwent a tubal ligation on October 18, 1983, nearly three and one-half years after the Preterm procedure. Id. At that time, appellant's new physician discovered that the IUD had not been removed, but had perforated appellant's uterus and become embedded in her left ligament. Id. On October 16, 1984, appellant notified appellee pursuant to the second paragraph of R.C. Section 2305.11(A) (the one-hundred-eighty-day notice) that she was considering instituting an action stemming from professional services rendered to her. Id. On April 11, 1985, appellant filed suit. Id. Appellee moved for summary judgment on June 12, 1985, arguing that appellant's action was barred by the four-year statute of repose for medical

12

malpractice suits embodied in R.C. Section 2305.11(B). Id. The trial court granted the motion and entered judgment for appellee. Id.

The Ohio Supreme Court reversed and stated that it could not agree with the court of appeals' conclusion that these allegations sounded in malpractice only. Id. at 56. A physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment, may give rise to a cause of action in fraud independent from an action in medical malpractice. Id.; Annotation (1973), 49 A.L.R. 3d 501, 506; *Leach* v. *Shapiro* (1984), 13 Ohio App. 3d 393, 397, 13 OBR 477, 482, 469 N.E. 2d 1047, 1054. The fraud action is separate and distinct from the medical malpractice action which stems from the surrounding facts where the decision to misstate the facts cannot be characterized as medical in nature. Id. In the instant cause, it cannot be said that the statement to appellant that her IUD had been removed when in fact it had not was motivated by any medical consideration. Id. Cases may exist where the withholding of information may be medically justified, *e.g.*, where the patient's known tendency to react hysterically to bad news would interfere with vital treatment. Id. Reasonable minds could certainly conclude that the misstatement in the instant cause was prompted not by medical concerns but by motivations unrelated and even antithetical to appellant's physical well-being. Id.

As a cause of action separate and distinct from medical malpractice, a claim of fraud is subject not to the medical malpractice statute of limitations contained in R.C. Section 2305.11, but rather to R.C. Section 2305.09, which provides a four-year limitations period for fraud. Id. at 56-57. The statutory period does not commence to run until the cause of action accrues, which occurs when the fraud and the wrongdoer are discovered. Id. at 57; R.C. Section 2305.09; *Burr, supra,* at paragraph three of the syllabus. Id. In *Gaines*, reasonable minds could conclude that

13

appellant did not discover the existence of the fraud and the identity of the wrongdoer until October 18, 1983, when the IUD which appellee told her had been removed was found still inside her body. Id. Thus, since appellant's complaint was filed April 11, 1985, summary judgment was improper. Id.

In the present case, Plaintiff did not discover that Defendant Marc Silverman had made fraudulent statements to him regarding the alleged completion of his root canal procedure until November 19, 2012. (Complaint, par. 7) Up until that date, as in *Gaines*, Defendant Silverman repeatedly told Plaintiff false information with the expectation that he would rely upon it to his detriment. Defendant Silverman knew that these statements were fraudulent since the dental records showed that the root canal was only a partial root canal. These fraudulent statements are in conjunction with Defendant Marc Silverman'a additional fraudulent statements to Plaintiff regarding the existence and destruction of his x-rays and dental records. (Complaint, pars. 22-25). Thus, since Plaintiff has alleged the necessary elements, and since the claim was timely filed within one year of the date of discovering the fraud, Plaintiff's fraud claim should not be dismissed under Kentucky or Ohio law.

2.    **Plaintiff's Intentional Infliction of Emotional Distress Claim Should Not be Dismissed under Kentucky or Ohio Law**

Plaintiff's intentional infliction of emotion distress claim is viable under Kentucky law. In *Craft v. Rice*, Ky., 671 S.W.2d 247, 251 (1984), Kentucky courts decided that intentional infliction of emotional distress was a viable claim because "there is a right to be free of emotional distress arising from conduct by another." Id. To make out a claim of intentional infliction of emotion al distress, the following elements must be proved: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in

14

that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Kroger Co. v. Willgruber*, Ky., 920 S.W.2d 61, 67 (1996); *Craft*, 671 S.W.2d at 249.

The statute of limitations for an intentional infliction of emotional distress claim is controlled by the five-year limitation period of KRS Section 413.120(7), as recognized in *Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984), KRS Section 413.120(7) is a general limitation statute applying to "[a]n action for an injury to the rights of the plaintiff, not arising on contract and not otherwise enumerated." However, "[a] specific statute of limitation preempts a general statute of limitation where there is a conflict." *Boyd v. C & H Transp.*, 902 S.W.2d 823, 824, 42 6 Ky. L. Summary 17 (Ky. 1995). Thus, the one year limitation period of KRS Section 413.140(1)(e) applies to all claims against physicians "for negligence or malpractice" under Kentucky law. In the present case, Plaintiff filed his intentional infliction of emotional distress claims against Defendants within one year of learning of Defendant Silverman's fraudulent statements. Thus, although the five year statute of limitations is applicable since the claim is not part of the dental malpractice claim, the claim is viable under even the one year limitation period.

Plaintiff's intentional infliction of emotional distress claim is also viable under Ohio law. The elements of this tort are: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of the plaintiffs psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable

man could be expected to endure it. *Phung v. Waste Management,* 71 Ohio St.3d 408, 410, 644 N.E.2d 286. In *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St. 3d 273, 603 N.E.2d 969, the Ohio Supreme Court held that the statute of limitations for intentional infliction of emotional distress is the four-year statute of R.C. 2305.09(D).

While emotional distress claims involving medical treatment are subject to the one-year statute of limitations because they arise out of the care and treatment provided, this is not the situation in the present case. *Butler v. Jewish Hosps. Inc.,* 1st Dist. No. C-940119, 1995 Ohio App. LEXIS 1787 (May 3, 1995); *Roberts v. Luneau-Gordon, M.D.,* 2d Dist. No. 15212, 1995 Ohio App. LEXIS 5245 (Nov. 29, 1995). In the present case, the statements made to Plaintiff were completely unrelated to Plaintiff's dental care or treatment. Rather, Defendant Silverman's statements to Plaintiff which resulted in his emotional distress were made solely in an attempt to avoid litigation. Defendant Silverman intentionally made false statements to Plaintiff that his pain could be from cancer when he knew this was not true, and he knew or should have known that this information would cause Plaintiff substantial emotional distress. (Complaint, pars. 28, 29) Thus, since Plaintiff's emotional distress claims is not part of Plaintiff's dental claim, and since Plaintiff timely filed his claim, Plaintiff's intentional infliction of emotional distress claim should not be dismissed under either Ohio or Kentucky law.

### 3. Plaintiff's Spoliation of Evidence Claim Should Not be Dismissed under Ohio Law

Plaintiff has a valid spoliation claim under Ohio law. While Kentucky prefers to handle the issue of spoliation of records through jury instructions, Ohio law considers spoliation of evidence to be a viable claim. Defendants illogically attempt to argue that because Plaintiff's dental malpractice claim was barred under Ohio law, then surely the legislators would also want to bar any claim that has any connection at all to that original dental treatment. However, this

16

argument is flawed in two main ways. First, although Plaintiff's dental malpractice claim is barred by the statute of repose under Ohio law, Plaintiff's remaining claims involve statements and conduct unrelated to dental care and thus are not included as part of that claim or barred by the statute of repose. Second, the public policy arguments which propelled the enactment of the statute of repose have no applicability in this case. There is no public policy to protect a dentist who destroyed dental records in an attempt to prevent his patient from bringing a dental malpractice claim against him.

As Plaintiff stated, the elements of a spoliation claim in Ohio are as follows: (1) pending or probable litigation involving the claimant; (2) the respondent's knowledge that litigation exists or is probable; (3) willful destruction of the evidence by respondent designed to disrupt claimant's case; (4) actual disruption of claimant's case; and (5) damages resulting therefrom. *Smith v. Howard Johnson*, 67 Ohio St.3d 28, 615 N.E.2d 1037, 1038 (Ohio 1993). Although there is no valid spoliation claim if there is no existing or probable litigation, this was not the situation in the present case for the reasons set forth above. Plaintiff had multiple viable claims under both Ohio and Kentucky law, and probable litigation was the very reason that Defendants willfully destroyed Plaintiff's dental records. Since this willful destruction of evidence has disrupted Plaintiff's case, Plaintiff's spoliation of evidence claim should not be dismissed.

E.     **Plaintiff's Complaint Should Not be Dismissed Pursuant to Civ. R. 10(D)(2)**

Kentucky law allows medical malpractice claims to proceed without expert testimony where the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it. *See Jarboe v. Harting*, Ky., 397 S.W.2d 775, 778 (1965); *Harmon v. Rust*, Ky., 420 S.W.2d 563, 564 (1967); *Maggard v. McKelvey*, Ky. App., 627 S.W.2d 44, 49

(1981). A similar result has been reached in dental malpractice actions. *See Butts v. Watts*, Ky., 290 S.W.2d 777, 779 (1956).

In the event that this Court does apply Ohio law to the facts of this case, and finds that the filing of an affidavit of merit is required, Plaintiff respectfully requested an extension of ninety days to file said affidavit of merit. Plaintiff originally filed his Complaint in the Commonwealth of Kentucky where such an affidavit was not required with the filing of the Complaint. If Plaintiff had originally filed in Ohio, and/or had believed that the State of Ohio was the correct venue or that its law would apply to the facts of this case, then Plaintiff would have filed such an affidavit of merit with the Complaint at that time.

Pursuant to Civ. R. 10(D)(2)(b), the plaintiff may file a motion to extend the period of time to file an affidavit of merit. Id. Although this would usually be filed with the complaint, for good cause shown and in accordance with division (c) of this rule, the Court shall grant the plaintiff a reasonable period of time to file an affidavit of merit, not to exceed ninety days. Civ. R. 10(D)(c) provides that in determining whether good cause exists to extend the period of time to file an affidavit of merit, the court shall consider the following:

> (i) A description of any information necessary in order to obtain an affidavit of merit;
> (ii) Whether the information is in the possession or control of a defendant or third party;
> (iii) The scope and type of discovery necessary to obtain the information;
> (iv) What efforts, if any, were taken to obtain the information; No. 09AP-253 4
> (v) Any other facts or circumstances relevant to the ability of the plaintiff to obtain an affidavit of merit.

Id. Since Plaintiff did not originally file his Complaint in the State of Ohio, and since it will take some time for Plaintiff to get an expert to prepare said affidavit, Defendant's Motion to Dismiss Plaintiff's Complaint should not be dismissed based upon his failure to file affidavit of merit when he originally filed this action in the Commonwealth of Kentucky.

## III.   CONCLUSION

Thus, for the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss Plaintiff's Complaint.   Although Plaintiff submits that this Motion should be denied if either Ohio or Kentucky are applied, Plaintiff respectfully requests that this Court apply Kentucky law to Plaintiff's causes of action based upon Plaintiff's significant contacts with the Commonwealth of Kentucky.   In the event that this Court finds that Ohio law applies, Plaintiff submits that respectfully requests that this Court grant him an additional ninety days to file his affidavit of merit.

Respectfully Submitted,

Peter Canavan Newberry, *Pro Se*
1217 Criswell Road
Berry, Kentucky 41003
Direct Dial:  (513) 608-4312
E-Mail:  peter.newberry@fuse.net

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint was served upon John M. Dunn, Esq., Michael M. Mahon, Esq., and Danny M. Newman, Jr., REMINGER CO., L.P.A., 525 Vine Street, Suite 1700, Cincinnati, Ohio 45202, on the 15th day of May, 2014.

Peter Canavan Newberry, *Pro Se*